**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

ANGEL PIZARRO and  :
CHRISTABELIZ PIZARRO, :
 :
    Plaintiffs, :
 :
v. : CASE NO.: 1:08-CV-167 (WLS)
 :
LPC PENDLETON QUANTICO PM, INC. :
 :
    Defendant. :
 :

## ORDER

Presently pending before the Court is Defendant LPC Pendleton Quantico PM, Inc's Motion for Summary Judgment (Doc. 18). For the following reasons, Defendant LPC Pendleton Quantico PM, Inc's Motion for Summary Judgment (Doc. 18) is **GRANTED**.

## PROCEDURAL HISTORY

Plaintiffs Angel and Christabeliz Pizarro brought this action in Dougherty County Superior Court. Initially, Plaintiffs filed a three count Complaint suing Defendant and two other parties for tort claims (including loss of consortium) arising out of a fire in Plaintiffs' military housing. (Doc. 1). Following Stipulation and Consent Judgment, Plaintiffs dismissed claims against all Defendants except LPC Pendleton Quantico PM, Inc. (Doc. 1)

This action was removed to this Court by Defendant on December 11, 2008 pursuant to 28 U.S.C. §§ 1441(a) and 1446(b) based on a complete diversity of citizenship between Plaintiffs and Defendants under 28 U.S.C. § 1332 (a)(1). (Doc. 1). Plaintiffs allege that Defendant is liable for negligence and breach of contract under Georgia law after Plaintiff Angel Pizarro suffered severe burns during a fire in a property managed by Defendant.

1

The sole remaining Defendant, LPC Pendleton Quantico PM, Inc., now brings its Motion for Summary Judgment (Doc. 18) asserting that no genuine issue of material fact exists as to the two remaining Counts (Count One and Count Two) and that Defendant is entitled to judgment as a matter of law. For the reasons stated in the Discussion section of this Order, *infra*, the Court finds Summary Judgment to be appropriate as to Count One and Count Two.

## FACTUAL SUMMARY

The following summary of relevant facts contains the undisputed facts derived from (i) the Complaint (Doc. 1-2), Defendant's Answer (Doc. 1-2), Plaintiffs' First Amended Complaint (Doc. 1-2), Defendant's Statement of Material Facts as to Which There is No Genuine Issue (Doc. 18-2), and Plaintiffs' Response thereto (Doc. 39), Plaintiffs' Statement of Material Undisputed Facts (Doc. 40), and Defendant's Response thereto (Doc. 43) which were submitted pursuant to Local Rule 56.[1] Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any

---

[1] Local Rule 56 states:

> The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact shall be numbered separately. Statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court. Affidavits and the introductory portions of briefs do not constitute a statement of material facts.
>
> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure.
>
> All documents and other record materials relied upon by a party moving for or opposing a motion for summary judgment shall be clearly identified for the court. Where possible, dates, specific page numbers, and line numbers shall be given.
> M.D. Ga. R. 56.

affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

On October 1, 2007, Defendant LPC Pendleton Quantico PM, Inc. ("Defendant" or "LPC") assumed responsibility for managing base housing at the Albany Marine Base.  (Doc. 18-2).  It did so by contract with Camp Pendleton and Quantico Housing, LLC., which had in turn contracted with the United States Government to operate military housing at several military installations across the county.  Id.  Prior to the assumption of management responsibilities by Defendant, the base housing was managed by the United States Military.  Id. The military's involvement in privatized housing is limited to fiscal/physical oversight and monitoring.  The "primary relationship" is between the tenants and the private landlords.  The Department of Defense limits its involvement to only "essential protection of the Department's interests."  Id.

Plaintiff Angel Pizarro was a United States Marine and was transferred to the Albany base on September 14, 2007, accompanied by his wife, Plaintiff Christabeliz Pizarro.  (Doc. 18-2 at 2).  Initially, Plaintiffs were housed in a base motel because housing was unavailable.  Id.  Plaintiffs were told that funds were not available to clean out homes and they would have to wait until a managerial change occurred to move into a new home.  (Doc. 39 at 3).  Plaintiff was also told that the budget did not allow for the house to get prepared for him to immediately move in because the managerial change was already underway.  (Doc. 39 at 3).  On October 1, 2007, Plaintiffs met with a rental office managed by Defendant and its employees.  Id.  Plaintiffs learned that an apartment was ready for move-in and they were sent with a maintenance employee to view the apartment.  Id.

Plaintiffs viewed the apartment while maintenance waited outside.² (Doc. 18-2 at 3). Plaintiffs were satisfied with the home and returned to the rental office to complete the necessary paperwork. Id. Plaintiffs entered into a lease agreement with Defendants. Id. The next day, Plaintiffs moved into the apartment. Id. Plaintiffs' unit had an overhead sprinkler, including a sprinkler in the kitchen ceiling. Id. The unit also had "Guardian chemical fire suppression system" manufactured by Twenty-First Century International Fire Equipment Services Corporation, mounted in the vent hood of the stove in a cabinet over the stove burners, or cook top. Id.

The single contract between Plaintiffs and Defendant was the Lease Agreement. (Doc. 40 at 7-8). The Lease between Plaintiffs and Defendant provided that Plaintiffs were responsible for checking and maintaining smoke detectors. (Doc. 40 at 4). The Lease also required the safety systems to be inspected and tested on a monthly basis by the resident. Id. However, Defendant and the United States Armed Forces (as administered by the Department of the Navy) were also parties to a Management Plan. (Doc. 40 at 6). The Lease Agreement entered into by Defendant and Plaintiffs does not expressly incorporate the Management Plan as part of the contractual duties of Defendant. (Doc. 43 at 2).³

---

² The parties devote much attention to whether or not a walk-through and demonstration of all features, including safety features, was required by Defendant at this time. As further discussed by the Court any reference to the requirement of a walk-through or safety orientation is referenced in the "Management Plan." The Management Plan is a contract between the Defendant and the United States of America, Department of the Navy. The Plan was adopted in furtherance of the government's larger privatization plan. Plaintiffs are not contractual parties to the Management Plan. This document is not incorporated into any contracts entered into by Plaintiff and any claims or injuries arising from Defendant's obligations pursuant to the Management Plan belong to the United States Government not Plaintiffs.

³ The Management Plan was the guide to efficiently and effectively manage security installation procedures. (Doc. 40 at 2). The Plan set forth the responsibilities of the service manager, including to "hold frequent meetings to coordinate services and implementing procedures and ensuring that residents understand the procedures with respect to fire and security services. Id. The plan also required Defendant to train its employees and provided a guide to property inspections. Id. at 3. The plan also provided for an inspection and preventative maintenance of the fire and carbon monoxide detectors annually and upon a change of occupancy. Id. In addition to the Management Plan, Defendant and the Armed Forces also entered into a Property Management Agreement regarding the management of the military housing. (Doc. 40 at 6). This agreement required that Defendant, as property manager, would receive

The fire suppression system was installed before Defendant assumed management responsibilities. (Doc. 18-2 at 4). The maintenance contractor had removed and reinstalled the fire suppression system but neither tested nor refilled any components of the system. Id. All maintenance of the fire suppression system was done by an independent contractor. (Doc. 39 at 4). Defendant's predecessor did not perform any testing or refilling work of the fire suppression systems. Id. Defendant was also unaware that its employees were not licensed as required under Georgia law, to service, install, and/or maintain automatic fire suppression systems. (Doc. 39 at 5). However, Defendant asserts it knew that the automatic fire suppression systems had been recently serviced because Defendant's employee, a former employee of the independent contractor, had supervised that servicing. (Doc. 18-2 at 4).

The fire suppression system was designed to react to heat by automatically dumping fire suppressant onto a burning cook top in the event of a fire. (Doc. 39 at 4). The fire suppression system canisters were mounted in the cabinet over the stove and were visible when the cabinet door was opened. (Doc. 18-2 at 3). The canisters were not visible when the cabinet door was closed. (Doc. 39 at 4). The cables leading to the system were mounted under the vent hood and also visible when looking under the vent hood. Id. Plaintiffs were aware of the fire suppression system but did not know what it was; nor was there a manual instructing Plaintiffs on the operation of the fire suppression system in the unit. (Doc. 18-2 at 4, Doc. 39 at 3-5, Doc. 40 at 5-6). Had it been available to Plaintiffs, the fire suppression system manual would have instructed users to never attempt to move a burning pan of cooking grease from the kitchen range, but instead to let the suppression system extinguish any range top fire. (Doc. 40 at 6).

---

copies of all guarantees and warranties pertinent to fixtures and equipment and familiarize itself with the character, location, construction, layout, plan and operation of the property and related equipment. Id. The Property Management Agreement is an internal agreement between Defendant and the United State of America, Department of the Navy and creates no contractual duties to Plaintiffs.

On November 11, 2007, Plaintiff Angel Pizarro was cooking French fries by cutting potatoes and frying them in oil in a pan on the right rear burner of the stovetop. (Doc. 18-2 at 4-5). The kitchen in Plaintiffs' unit is small and the sink is to the right of the stove. Id. The stove is near the door to a small dining room, which is also very near an outside door. Id. As Plaintiff cooked, the oil in the pan began smoking. Id. Plaintiff picked up the pan and held it to the vent but it continued to smoke. Id. Plaintiff then placed the pan on the front burner which was turned off. Id. The pan flamed up as he placed it back down on the stove. Id.

Plaintiff Angel Pizarro then left the kitchen to find a towel to smother the fire. (Doc. 18-2 at 5). He was away from the kitchen between twelve (12) and thirteen (13) seconds and returned after being unable to find a towel to smother the fire. Id. When Plaintiff returned to the kitchen, he took the flaming pan off of the stove and stood in the center of the kitchen debating what to do next. Id. Plaintiff decided to take the pan outside, when the overhead sprinkler was triggered and began to spray water. Id. at 6. The spray of water from the sprinkler caused the pan to "explode." (Doc. 18-2 at 6). Plaintiff immediately threw the pan outside into the yard from the front door. Id.

Plaintiff Angel Pizarro then sustained severe burns to his arm and hand. (Doc. 18-2 at 6). After the fire, Defendant checked the fire suppression unit and found that it had not discharged its contents. Id. Defendant stated that the unit was fully charged. Id. However, the parties dispute the nature of the after-the-fact "test" of the fire suppression unit. (Doc. 39 at 6). Defendant admits that the only way to test the equipment is to intentionally cause a discharge of the unit, which it did not undertake. (Doc. 18-2 at 6).

**DISCUSSION**

A.  **SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Allen, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999); Celotex, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. See Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. See id. at 322-24. Once the movant has met is burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. See Celotex, 477 U.S. at 322-23; Allen, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

B. **BREACH OF CONTRACT**

Plaintiffs and Defendant were parties to a Lease Agreement. Plaintiffs have not alleged that the Lease Agreement contained obligations that Defendant provide or maintain automatic fire suppression systems. Nor, do Plaintiffs allege that the parties' Lease Agreement contains obligations that Defendant was to provide tenant safety orientation and fire prevention instruction. A review of the pleadings before the Court reveals that a lion's share of Plaintiffs' theories of liability arise from their belief that Defendant owed Plaintiffs a contractual obligation arising from Defendant's contracts with a third-party through the Management Plan and Third Amended and Restated Real Estate Ground Lease, both contracts entered into between Defendant and the United States of America, Department of the Navy.

Plaintiffs allege that Defendant had a contractual obligation with the Department of the Navy pursuant to the Management Plan and Third Amended and Restated Real Estate Ground Lease to, among other things, inform Plaintiffs of the automatic fire extinguishing system, hold frequent meetings to coordinate services and implement procedures, and ensure that residents understood the procedures with respect to fire and security services, train its employees and provide a guide to property inspections, undertake inspection and preventative maintenance of the fire and carbon monoxide detectors annually (and upon a change of occupancy), receive

copies of all guarantees and warranties pertinent to fixtures and equipment and familiarize itself with the character, location, construction, layout, plan and operation of the property and related equipment.  <u>See</u> <u>generally</u> Doc. 1, Doc. 37.

Defendant argues that there is no contractual duty to the Plaintiffs in relation to the automatic fire suppression systems.  Doc. 18.  And, to this end, the automatic fire suppression system is not referenced in the parties' contractual Lease Agreement– or in any contract between the Defendant and the Government.  To overcome this problem, Plaintiffs assert that it "is undisputable that the Management Plan was part of the contract" and the Management Plan inferred on Defendants the duty to provide safety training to Plaintiffs.  <u>See</u> <u>generally</u> Doc. 38.

Federal courts sitting in diversity apply the substantive law of the state in which the case arose.  <u>Pendergast v. Sprint Nextel Corp.</u>, 592 F.3d 1119, 1132 (11th Cir. 2010).  Thus, because Plaintiff sustained these injuries in Georgia, the Court will apply Georgia substantive law.

To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."  <u>See</u> O.C.G.A. § 13-3-1.  Generally, "[i]t is not essential that a contract be contained in a single document," and "[b]inding contracts may consist of several writings-provided there is no conflict between the various parts."  <u>Cassville-White Assoc. v. Bartow Assoc.</u>, 150 Ga.App. 561, 564, 258 S.E.2d 175 (1979) (citations omitted).

In the instant case, a single contract existed between Plaintiffs and Defendant, the October 1, 2007 Lease Agreement.  (See. Doc.36-7).  The Lease Agreement expressly excludes any other writings from the scope of the agreement between the parties.  <u>Id</u>. at ¶ 37.  Further, the Lease Agreement disavows any of Defendant's duties to furnish "security devices." <u>Id</u>. at ¶ 25. An automatic fire suppression system is not referenced or expressly contemplated by the Lease

9

Agreement. More importantly, Plaintiffs have not alleged that Defendant owed them a duty contained in the Lease Agreement that relates to the automatic fire suppression systems.

Although difficult to discern, the Court believes that Plaintiffs mean to allege that they are third-party beneficiaries to Defendant's contract with the United States of America, Department of the Navy, and may pursue this action as such. Georgia law provides that "[a] third-party beneficiary must be the intended beneficiary of the contract…" and that the mere fact that a third party would benefit incidentally from the performance of the contract is not alone sufficient to give such person standing to sue on the contract. <u>Miree v. U.S.</u>, 242 Ga. 126, 135, 249 S.E.2d 573 (1978), <u>see</u> <u>also</u> <u>Page v. City of Conyers</u>, 231 Ga.App. 264, 266, 499 S.E.2d 126 (1998). The non-party must further show that both parties to the contract intended that the third-person should be the beneficiary. <u>Walls, Inc. v. Atlantic Realty Co.</u>, 186 Ga.App. 389, 367 S.E.2d 278 (1988). Moreover, the rights of this third-party can be no greater than those granted to the parties under the contract, and thus construction of the contract is required to determine the third-party's rights. <u>Allstate Ins. Co. v. Sutton</u>, 290 Ga.App. 154, 160-161, 658 S.E.2d 909 (2008).

Construing the record in the light most favorable to the Plaintiffs, the Court will accept Plaintiffs' assertion that they were intended third-party beneficiaries of the Management Plan and Third Amended and Restated Real Estate Ground Lease for the purposes of the instant summary judgment analysis. However, Plaintiffs have not sufficiently proven that Defendants owed a duty under the Lease Agreement, Management Plan or the Third Amended Ground lease relating to automatic fire suppression systems. A review of the record reveals no mention of the automatic fire suppression system in any of the contractual documents Plaintiffs argue apply to and cover the premises they leased.

The Court's analysis might yield a different result were the item at issue a smoke detector or fire alarm. But, Plaintiffs have not shown that an automatic fire suppression system was intended to fall within the category of security systems in the same manner as either of these common fire security items. Unlike smoke detectors, where Georgia law has provided an instructive statute O.C.G.A. § 25-2-40, there is no state law pertaining to automatic fire suppression systems.[4] In its most basic form, a breach of contract claim will only be defined by the terms of the original agreement. Here, Plaintiffs have failed to prove that there was any agreement regarding Defendant's obligations expressly related to an automatic fire suppression system to Plaintiffs or any other contracting parties. Defendant was under no contractual or regulatory requirement to provide safety training or any guidance to Plaintiffs regarding the automatic fire suppression system. Therefore, Summary Judgment is appropriate as to Plaintiffs' breach of contract claim.

**C.    NEGLIGENCE**

Most cases related to fires in leased premises relate to smoke and/or fire alarms. Often, Plaintiffs will allege that a smoke alarm failed to work properly resulting in injury or even death. See e.g. Denise v. Cannon, 219 Ga.App. 765, 766-767, 466 S.E.2d 885 (1995). However, the instant case revolves around an automatic fire suppression system. Plaintiffs, as tenants, allege that Defendant, as lessor, negligently failed to inform, educate, and train Plaintiffs about the existence of the system. Further, Plaintiffs allege that Defendant's negligence continued because it failed to ensure that the automatic fire suppression system was maintained by a licensed individual or that it worked properly at the time of the fire.

---

[4] O.C.G.A. § 25-2-40(a) provides that "[e]xcept as otherwise provided in subsection (f) of this Code section, on and after July 1, 1987, every new dwelling and every new dwelling unit within an apartment, house, condominium, and townhouse and every motel, hotel, and dormitory shall be provided with an approved listed smoke detector installed in accordance with the manufacturer's recommendations and listing."

11

Under Georgia law, the elements of a negligence cause of action are: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a causal connection between the conduct and the injury; and (4) damages from the breach of duty. Underwood v. Select Tire, 296 Ga. App. 805, 808, 676 S.E.2d 262 (2002). "Negligence is conduct which falls below the standard established by law for the protection of others against this risk." Id. at 809. Further, the fact that injury results from alleged negligence is not, alone, sufficient to satisfy the requirements of negligence law.

1.     Duty Owed to Plaintiffs

In a negligence case, the threshold issue is whether, and to what extent, Defendant owes plaintiffs a duty of care. Ford Motor Co. v. Reese, 300 Ga.App. 82, 84, 684 S.E.2d 279 (2009). Georgia law imposes a duty on all landlords to keep rented premises in repair and liability for failure to do so. O.C.G.A. § 44-7-13; 44-7-14. However, "[o]rdinary care in the fulfillment of the landlord's duty to keep the premises in repair does not embrace an affirmative duty to make such an inspection of the premises as will disclose the existence of any and all latent defects which may actually exist therein." Padilla v. Hinesville Housing Authority, 235 Ga. App. 409, 509 S.E.2d 698 (1998).

Defendants, as landlords, had a duty to maintain the premises in a safe condition; this is a statutory duty. OCGA §§ 51-3-1; 44-7-13; Hickman v. Allen, 217 Ga.App. 701, 458 S.E.2d 883 (1995). A landlord impliedly warrants that the rented premises are in good repair, and if by reason of a latent defect they are not, he is liable if he actually knew they were not in good repair or if by the exercise of ordinary care he could have discovered that they were not, if the defective condition is the proximate cause of the injury. Denise v. Cannon, 219 Ga.App. 765, 466 S.E.2d

885 (1995). The requirement of ordinary care in maintaining an adequate fire detection and alarm system, whether established by ordinance or by the jury's finding, is intended to warn of fire whatever its cause. Thus, solely for the purposes of the instant Motion for Summary Judgment, the Court finds that the duty element of Plaintiffs' negligence claim is met. This finding on summary judgment shall carry no precedential value. The Court finds there exists a question of fact as to what the scope of Defendant's duty to Plaintiffs was as relates to the automatic fire suppression system

2. Breach of Duty of Care

Further, a Defendant breaches his duty when he either does something that he should not have done or fails to do something that he should have done. Snellgrove v. Hyatt Corp., 277 Ga.App. 119, 625 S.E.2d 517 (2006). Viewed in the light most favorable to Plaintiffs, as the Court must do at this stage of the proceedings, Defendant arguably breached its duty by failing to educate Plaintiffs about the automatic fire suppression system and ensuring that it was properly maintained. The Court stresses that it is viewing the available evidence in the light most favorable to the Plaintiff, who admit that though they were aware fire suppression system, they did not know what it was, or how to operate the system. Thus, solely for the purposes of the instant Motion for Summary Judgment, the Court finds that the breach element of Plaintiffs' negligence claim is met. This finding on summary judgment shall carry no precedential value.

3. Causation of Harm Arising from Breach of Duty

Breach of duty alone does not create liability. Britt v. Kelly & Picerne, Inc., 258 Ga.App. 843, 575 S.E.2d 732 (2002). Plaintiffs must still prove the two remaining negligence elements, causation and harm. Kecskes v. City of Mount Zion, 300 Ga.App. 348, 685 S.E.2d 329 (2009). To prove causation, Plaintiffs must show that Defendant's alleged negligence was both the cause

in fact and the proximate cause of the injury. Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman, 260 Ga. 569, 37 S.E.2d 799 (1990). First, Plaintiffs must introduce evidence affording a reasonable basis for the conclusion that Defendant's conduct was more likely than not a cause in Plaintiff's injury. Lore v. Suwanee Creek Homeowners Ass'n, Inc., Nos. A10A0012, A10A0013, 2010 WL 2522203, at *5 (Ga. App. June 24, 2010). Second, to establish proximate cause, Plaintiffs must show a legally attributable causal connection between Defendant's negligent conduct and the alleged injury. Id.

### *a.* *But-For Causation*

When deciding tort claims, Georgia courts use the "but for" test to determine cause in fact. Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. A10A1125, 2010 WL 1855764, at *5 (Ga. App. May 11, 2010). Under the "but for" test, causation exists when an injury can be traced directly to a Defendant's wrongful act, and but for such wrongful act, the injury would not have resulted. Parris v. Pleger Ins. Agency, 180 Ga.App. 437, 348 S.E.2d 924 (1986). Viewing the facts as admitted by Plaintiffs[5] in the light most favorable to Plaintiffs, the Plaintiffs assert that but for their ignorance regarding the operation of the automatic fire suppression system, Plaintiff Angel Pizarro would have not attempted to "fight the fire." In essence, Plaintiff Angel Pizarro's injuries would not have occurred. However, Plaintiffs have not provided any evidence to this end. The Court thus finds that the but-for causation element of Plaintiffs' negligence claim is not met.

### b. *Proximate Cause*

Even assuming but-for causation was shown by Plaintiffs, the Court would need to examine the record for evidence of proximate cause. For proximate cause to exist, the injury must have been a foreseeable, natural, and probable consequence of the Defendant's negligence.

---

[5] See *supra* discussion of L.R. 56.

Combs v. Atlanta Auto Auction, Inc., 287 Ga.App.9, 650 S.E.2d 709 (2007). Plaintiffs state that a question of fact arises on whether the automatic fire suppression system was in working order, and whether it should have extinguished the stove top fire long before Plaintiff was "required" to act. Thus, Plaintiffs allege the proximate cause is a factual issue. Although the question of proximate cause is ordinarily a jury issue, the court may decide plain and indisputable cases as a matter of law. Reid v. Midwest Transp., 270 Ga.App. 557, 607 S.E.2d 170, 174 (2004). In such plain cases, the inquiry is whether the causal connection between the Defendant's conduct and the injury is too remote to allow recovery. Id. The injury is too remote if, according to the usual experience of mankind, the result was not foreseeable. Beasley v. A Better Gas Co., Inc., 269 Ga.App.426, 427, 604 S.E.2d 202 (2004). Here, the Court finds that the causal connection is too remote to allow recovery. Even if Defendants had done everything Plaintiffs' state was required; they have shown no evidence that the injury would not have occurred— other than pure conjecture.

Even if Plaintiff produced expert testimony establishing a factual issue as to whether Defendant was negligent in failing to inform Plaintiffs about the operation of the automatic fire extinguishing system or properly service the system, Plaintiffs were required to prove as an essential element of these claims that Defendant's alleged negligence was a proximate cause of Plaintiff Angel Pizarro's injury. Bradley Center, Inc. v. Wessner, 250 Ga. 199, 296 S.E.2d 693 (1982). Defendant moved for Summary Judgment, in part, because its alleged negligence, if any, was not a proximate cause of Plaintiff's injury.

In the present case, Plaintiff's injuries are a direct result of his actions. After the pan caught fire, Plaintiff Angel Pizarro was unsure of what to do. Plaintiff ultimately removed the flaming pan from the stove, stood in center of the kitchen and triggered the overhead sprinklers,

15

which sprayed water into the flaming pan and caused the pan to "explode." (See Doc. 18-2 at 6). Because Plaintiff's own subsequent negligence intervened between the alleged negligence of Defendant and his injury, the Court cannot find that Defendant's negligence constituted the sole proximate cause of the injury. Cieplinski v. Caldwell Elec. Contractors, 280 Ga.App. 267, 275, 633 S.E.2d 646 (2006).

In Georgia, on Motion for Summary Judgment, a Plaintiff alleging another's negligence as the cause of his injury "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the Defendant was a cause in fact of the result." (Citation omitted.) Feazell v. Gregg, 270 Ga.App. 651, 654-655, 607 S.E.2d 253 (2004). Plaintiffs ask the court to adopt a finding that the mere possibility of Defendant's negligence as alleged contributed to his injury in such a substantial way as to allow recovery. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant Summary Judgment for the Defendant." (Citation omitted.) Feazell at 655.

Plaintiffs have presented no evidence or otherwise established as a fact that the fire suppression equipment malfunctioned, thus requiring Plaintiff to remove the pan from the stove as he did. At most, Plaintiff argues that he took the actions he did because he did not know about the fire suppression system. As Defendant argues in its Brief in Support of its Motion for Summary Judgment,

> Plaintiff "let the grease get too hot; he was not monitoring the pan of grease and he was turned away from it with his attention on other tasks (citation omitted); he did not smother the fire with a pan lid; he did not have baking soda at hand, even though he knew that would put out a grease fire (citation omitted); he stood with a pan of flaming grease under a water sprinkler. The presence or absence of the [fire suppression unit] played no role in his decision and no role in the cause of the injury.

(Doc. 18-7 at 19).

Often, questions concerning a lack of ordinary care and proximate cause are preserved for the jury; however, cases presenting plain, palpable, and undisputed evidence that Defendant's alleged negligence did not proximately cause the injury, may be resolved as a matter of law. See, e.g., Rossano v. American Legion Post No. 29, 189 Ga.App. 610, 376 S.E.2d 698 (1988). Plaintiff's decision to move the pan towards the sink may have been both unusual and improbable but remains the proximate cause of his injuries. See generally La Quinta Inns, Inc. v. Leech, 289 Ga.App. 812, 816, 685 S.E.2d 637 (2008)(citation omitted)("[a]n intervening act of negligence…breaks the chain of causal connection for purposes of tort liability between the original negligence and the injury and becomes the sole proximate cause of the injury.").

4. Damages Arising from Harm

Defendants additionally argue that Plaintiff's negligence is the sole proximate cause of his injury. O.C.G.A. § 51-11-7 provides that "if the Plaintiff by ordinary care could have avoided the consequences to himself caused by the Defendant's negligence, he is not entitled to recover." Here, Plaintiffs have failed to establish Defendant's negligence as a proximate cause of Plaintiff Angel Pizarro's injury and have conceded at lease some negligence on the part of Plaintiff. Section 51-11-7 of the O.C.G.A. thus bars any recovery for Plaintiffs. The facts before the Court show that the causal connection between Plaintiff's harm and the alleged negligent acts of Defendant are simply too remote for the law to permit recovery. Johns v. Housing Authority for City of Douglas, 297 Ga.App. 869, 678 S.E.2d 571 (2009).

5. Conclusion

A plaintiff in a negligence action must satisfy all of the following four elements: duty, breach, causation, and harm. Kecskes v. City of Mount Zion, 300 Ga.App. 348, 685 S.E.2d 329

(2009). The Court finds that, even when viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have failed to satisfy the causation element of Defendant's negligence as the proximate cause of Plaintiff's injury. Plaintiffs have thus failed to identify "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. Because Plaintiffs failed to offer facts supporting Defendant's negligence as the cause of Plaintiffs injury, and because there is no genuine issue of material fact, Defendants are entitled to judgment as a matter of law as to Plaintiffs' negligence claims.

### D. LOSS OF CONSORTIUM

Because the Court has granted Defendants' Motion for Summary Judgment (Doc. 18) as to Plaintiffs' breach of contract and negligence claims Summary Judgment is also appropriate as to any claims by Plaintiff Christabeliz Pizarro arising from a loss of consortium.

### CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion for Summary (Doc. 18) is **GRANTED**. Judgment shall be entered for Defendant as to Plaintiffs' claims.

**SO ORDERED**, this  29th  day of September, 2010.

    /s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**